# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE D. ROSALES, | ) NO. CV 10-01771-MAN |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) AND ORDER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff filed a Complaint on March 15, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for disability insurance benefits ("DIB"). On May 13, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on February 18, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff, who was born on December 8, 1953,[1] filed an application for DIB. (Administrative Record ("A.R.") 24, 87.) Plaintiff claims to have been disabled since November 11, 2003, due to musculoskeletal impairments, spinal and back injury, and depression. (A.R. 24, 80.) Plaintiff has past relevant work experience as a maternity ward nurse. (A.R. 30, 81, 882.)

After the Commissioner denied plaintiff's claim (A.R. 61-66), plaintiff requested a hearing (A.R. 67). On March 14, 2007, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Sally C. Reason (the "ALJ"). (A.R. 876-900.) Vocational expert Gregory S. Jones also testified. (*Id.*) On October 26, 2007, the ALJ denied plaintiff's claim (A.R. 24-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 5-8). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since November 11, 2003, the alleged onset date of plaintiff's claimed disability. (A.R. 24.) The ALJ determined that plaintiff's "'severe' impairments lie in the musculoskeletal realm, primarily

---

[1] At the time of the ALJ's decision, plaintiff was 53 years old, which is defined as an individual "closely approaching advanced age." (A.R. 24, 30; 20 C.F.R. § 404.1563.)

involving the lumbar spine and secondarily, the cervical spine." (A.R. 25.) The ALJ also determined that plaintiff's headaches and "medically determinable impairment of depressive disorder, NOS," are "'not severe.'"[2] (*Id.*) The ALJ further determined that plaintiff "does not have [a]n impairment or a combination of impairments that meets or equal[s] in severity an impairment listed at Appendix 1 to Subpart P of Regulations no. 4." (A.R. 31.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") for "light work," with the exception that she is "limited to occasionally climbing ladders, stooping and crouching." (A.R. 25, 31.)

The ALJ concluded that plaintiff is unable to perform her past relevant work. (A.R. 30-32.) However, having considered plaintiff's age, education, work experience, RFC, as well as the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including those of office nurse or school nurse. (A.R. 31.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, "at any time through the date of [her] decision." (A.R. 32.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

_____

[2] The ALJ also noted that plaintiff has "a history of carpal tunnel syndrome, with no showing or claim of an active problem material to the pending application" and "mild to moderate sleep apnea, [which plaintiff] does not allege . . . as a limiting condition." (A.R. 25.)

3

decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which

4

exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ improperly evaluated the opinion of plaintiff's treating physician. (Joint Stipulation ("Joint Stip.") at 1-18.)

**I.  The ALJ Failed To Give Clear And Convincing Reasons For Rejecting The March 2007 Opinion Of Plaintiff's Treating Physician.**

It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. <u>Connett</u>, 340 F.3d at 874; <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57 (9th Cir. 2002); <u>Magallanes</u>, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for

5

"clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.; see also* <u>Orn</u>, 495 F.3d at 632; <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008).

On April 9, 2005, plaintiff had a consultative examination with Kambiz Hannani, M.D., an orthopedic surgeon. (A.R. 201-04.) Dr. Hannani noted that plaintiff presented with complaints of neck and low back pain stemming from a 1998 work injury. (A.R. 201.) A physical examination of plaintiff revealed, *inter alia*: (1) reduced range of motion in the cervical and thoraculombar spine; (2) tenderness to palpation in the cervicothoracic and lumbosacral junction; and (3) negative straight leg raise testing. (A.R. 202-03.) Although it appears that Dr. Hannani was not provided with plaintiff's entire medical record, he was able to review x-rays of plaintiff's cervical and lumbar spine, which showed a moderate amount of spondylosis at C4-C6 and traction osteophytes at L3-L4-L5. (A.R. 204.) After reviewing plaintiff's x-rays and physically examining plaintiff, Dr. Hannani opined that plaintiff has degenerative disk disease in both her lumbar and cervical spine. (A.R. 204.) Dr. Hannani further opined that plaintiff "is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, [and] standing and/or walking six hours out of an eight hour day." (*Id.*)

An April 26, 2005 RFC Assessment Physical by state agency physician F. Wilson, M.D. largely mirrored Dr. Hannani's RFC assessment, although

Dr. Wilson additionally opined that plaintiff: (1) was limited to occasional stooping, crouching, and climbing of ladders, ropes, and scaffolds; and (2) should avoid concentrated exposure to extreme cold and heat. (A.R. 225-33.)

After plaintiff's initial consultative examination with Dr. Hannani, plaintiff began to see Dr. Hannani regularly. On June 9, 2005, plaintiff saw Dr. Hannani for an orthopedic spinal evaluation. (A.R. 666-68.) Dr. Hannani noted that plaintiff presented with: "neck pain with radiation into the left upper extremity"; "low back pain with radiation into the left lower extremity"; "pain [in] the right upper extremity"; and "very minimal [pain in] the right lower extremity." (A.R. 666.) A physical examination of plaintiff revealed, *inter alia*: "a bit of an antalgic gait on the left side"; limited lumbar and cervical spine range of motion; tenderness in the biceps and paraspinal muscles; decreased sensation in the upper and lower extremities; and positive straight leg raise testing. (A.R. 667-68.) After reviewing x-rays and July 2004 MRIs of plaintiff's cervical and lumbar spine, Dr. Hannani opined that plaintiff has: (1) "left-sided radiculopathy, most likely [at] C5 and C6, with some central stenosis at C4-5 and spondylosis at C3-4 and C5-6"; and (2) "left-sided L5 radiculopathy with disk herniation, left-sided L4-5." (A.R. 668.) However, before recommending any treatment options for plaintiff, Dr. Hannani wanted to review new MRIs of plaintiff's cervical and lumbar spine. (*Id.*)

On June 15, 2005, plaintiff had MRIs of her cervical and lumbar spine. While the updated cervical spine MRI showed "no significant interval change[s]," Dr. Hannani noted that the MRI showed: (1) a "2 mm

disc/osteophyte complex bulge . . . at C3-4 with mild central canal stenosis and mild left neural foraminal narrowing"; a "2-3 mm disc/osteophyte complex bulge . . . at C4-5 with mild to moderate central canal stenosis and mild bilateral neural foraminal narrowing; and "at C5-6, [a] 2 mm disc/osteophyte complex bulge with mild to moderate central canal stenosis and mild left neural foraminal narrowing." (A.R. 697.) Unlike the cervical spine MRI, the updated lumbar spine MRI showed new changes, including: (1) a 2 mm diffuse disc bulge at L2-3 and L3-4; (2) a "worsened" 6-7 mm left paracentral protrusion at L4-5 that "resides in the left lateral recess and compresses the L5 nerve root"; and (3) a "slightly increased" 3 mm diffuse disc bulge at L5-S1. (A.R. 694-95.)

After reviewing plaintiff's updated MRIs, Dr. Hannani discussed plaintiff's options to address her leg and back pain. With respect to her leg pain, Dr. Hannani recommended that plaintiff have a small open microdiskectomy procedure which would involve "tak[ing] out the disk herniation and free[ing] up the L5 nerve root." (A.R. 665-66.) Dr. Hannani explained to plaintiff, however, that the procedure is only designed to help plaintiff's leg pain and, in fact, "may aggravate her low back pain." (A.R. 666.) To address plaintiff's back pain, Dr. Hannani stated that plaintiff "will likely require a stabilization [procedure], which again is a big surgery, [but he] would not recommend it for her at this time." (A.R. 665.)

On July 13, 2005 plaintiff underwent a microdiskectomy surgery to alleviate the pain in her left leg. (A.R. 244-45.) On July 18, 2005, Dr. Hannani wrote a letter in which he indicated that, for at least the

next three months, plaintiff is:  (1) limited to "no lifting greater than 10 pounds occasionally and no greater than 5 pounds frequently"; (2) "precluded from frequent bending and/or stooping"; and (3) "precluded from standing for greater than 4 hours a day."  (A.R. 662-63.)

In the months following surgery, plaintiff's left leg improved; however, plaintiff continued to experience pain in her back and began to experience pain in her right lower extremity.[3]  However, although plaintiff reported significant back pain, Dr. Hannani recommended against a stabilization procedure at that time, in part, because plaintiff's daughter recently died and the resulting stress "can easily exacerbate [plaintiff's] neurological findings."  (A.R. 660-61.)

In December 2005, plaintiff was involved in a car accident and reported significant low back and neck pain.  (A.R. 659-60.)  A December 19, 2005 examination of plaintiff revealed lumbar and cervical range of motion was "about 50% of expected [range of motion]."  (*Id.*) Plaintiff also "had tenderness to palpation in the cervicothoracic [and] thoracolumbar junction," and some "trapezial tenderness too."  (*Id.*)  In addition, plaintiff had positive straight leg raise testing on both sides.  (*Id.*)  Accordingly, Dr. Hannani opined that plaintiff had an

---

[3]     A.R. 663 (07/18/05 -- "leg pain is a lot better"; "[s]traight-leg[-]raise testing on the left at about 80 degrees causes some pain"); A.R. 662 (08/18/05 -- "leg has improved"; "some right-sided paraspinal pain"; "continuing to have back pain"; A.R. 661 (10/20/05 -- "[f]ortunately her leg pain has improved, but she continues to have a lot of back pain as well as some neck symptoms"); A.R. 660 (12/08/05 -- "degenerative disk disease, status post left-sided microdiskectomy with significant improvement in the left lower extremity"; "continued low back pain with right lower extremity radiculitis").

"acceleration-deceleration injury with increased low back pain and now radiation into the left lower extremity, which she did not have after . . . surgery"; and "neck pain with radiation, which she had before surgery and is aggravated by the accident."  (*Id.*)

Following her car accident, plaintiff continued to report pain in her back and left leg.[4]  While plaintiff tested inconsistently on straight leg raise testing, Dr. Hannani's treatment notes indicate that plaintiff has, *inter alia*:  weakness in her left big toe (A.R. 658); an antalgic gait on the left side (A.R. 657); decreased sensation in the left lower extremity (A.R. 654); limited lumbar range of motion (*id.*); tenderness to palpation in the lumbosacral junction (*id.*); and "low back pain status post diskectomy, with degenerative disk disease" (*id.*).  Dr. Hannani noted that plaintiff has "obvious degenerative disk disease for which she may end up with a stabilization procedure, but [Dr. Hannani] would wait until this becomes severe."  (*Id.*)  Additionally, in a March 9, 2006 form entitled "Return To Work Information," Dr. Hannani found plaintiff to be "temporarily totally disabled."  (A.R. 669-71.)  Further, in a DMV certificate dated November 2, 2006, Dr. Hannani found plaintiff to have a significant limitation in the use of her lower extremities due to "post diskectomy with degenerative disk disease."  (A.R. 700.)

---

    [4]    *See*, *e.g.*, A.R. 657-58 (02/20/06 -- plaintiff "is still complaining of pain becoming a lot worse after her motor vehicle accident"; "has some radiating pain going down the leg"; "getting more cramping in the left leg again"); A.R. 656-57 (03/09/06 -- plaintiff "is in a lot of pain in her back radiating into her legs"; "left leg definitely improved with the surgery, but then after the car accident she has been having more and more symptoms").

In a March 1, 2007 Orthopedic Follow-Up Evaluation, plaintiff presented with continued back and leg pain with radiation. (A.R. 713.) After physically examining plaintiff, Dr. Hannani noted that plaintiff "has limited range of motion of her back with no subluxation" and that her "[m]otor and sensory exams look okay." (*Id.*) Dr. Hannani opined that plaintiff has "status post decompression with significant degenerative disk disease, lumbar spine." (*Id.*) Dr. Hannani noted that, while plaintiff had microdisketomy surgery, she continues to have back and lower extremity pain, "especially after she was involved in the car accident." (*Id.*) He further noted that plaintiff's surgery did not address her degenerative disk disease at the L4-5 and L5-S1 locations and "[u]nfotunately, fixing this would involve a big surgery, front and back, which we have been trying to avoid for her." (*Id.*) Accordingly, "[g]iven the fact that [plaintiff] continues to have the internal disk disruption and postlaminectomy syndrome," Dr. Hannani "fe[lt] that she is very limited" and therefore, restricted plaintiff to "lifting and carrying 10 pounds occasionally, less than 10 pounds frequently"; and "stand[ing] and walk[ing] 2 hours out of an 8-hour day." (*Id.*)

As plaintiff properly notes, this case is unusual, because Dr. Hannani served initially as plaintiff's consultative examiner and later as plaintiff's treating physician. In his decision, the ALJ rejects Dr. Hannani's March 2007 treating source assessment, because "the cumulative medical and lay evidence does not warrant a change from Dr. Hannani's assessment in April 2005." (A.R. 30.) Specifically the ALJ rejects Dr. Hannani's opinion because: (1) "[t]here have been no new studies since the accident"; (2) Dr. Hannani's "discussion of the lower extremities in March 2007 is somewhat peculiar in that essentially positive findings

11

continued to be [reported] in the admittedly improved left lower extremity"; and (3) "Dr. Hannini continued to recommend against another back surgery." (*Id.*)

The ALJ's first ground for rejecting Dr. Hannani's March 2007 opinion -- *to wit*, that there have been no studies since plaintiff's car accident -- is not convincing. As an initial matter, Dr. Hannani's April 2005 assessment is based upon a one-time physical examination of plaintiff, for which Dr. Hannani was provided some, but not all, of plaintiff's medical records. Dr. Hannani's March 2007 assessment is based upon a complete review of the medical records -- including, *inter alia*, old and new MRIs of plaintiff's cervical and lumbar spine -- and multiple physical examinations of plaintiff. Notwithstanding this fact, the ALJ rejects Dr. Hannani's March 2007 opinion, because there have been no new studies since plaintiff's car accident. While post-accident studies undoubtedly would have been helpful, the fact that there were no such studies cannot constitute a convincing reason for rejecting Dr. Hannani's March 2007 opinion -- an opinion that is uncontroverted and informed by a complete review of the medical record, updated studies, and multiple physical examinations of plaintiff. To the extent the ALJ found such studies necessary, the ALJ should have developed the record further.[5]  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(noting that an ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered")(citations and internal quotations omitted); *see* Widmark, 454 F.3d at 1069 (ALJ has a duty to develop the record where there is a

[5]  The record indicates that additional studies were submitted following the ALJ's decision. (*See*, *e.g.*, A.R. 852-67.)

"gap" in the medical evidence).

The ALJ's second ground for rejecting Dr. Hannani's March 2007 opinion is also unpersuasive. In rejecting his March 2007 assessment, the ALJ found Dr. Hannani's discussion of plaintiff's lower extremities "somewhat peculiar in that essentially positive findings continued to be [reported] in the admittedly improved left lower extremity." (A.R. 30.) Although it is true that plaintiff reported improvement in her left lower extremity following surgery, as noted *supra*, plaintiff reported, and Dr. Hannani's physical examinations indicate, significant worsening in plaintiff's lower extremities after her car accident. (A.R. 654, 656-58.) Thus, when Dr. Hannani's treatment notes are read together, it does not appear, as the ALJ contends, that plaintiff continues to have "essentially positive findings" in her lower extremities following her surgery. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 (9th Cir. 1998)(reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); *see also* <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion) Moreover, to the extent the ALJ found it "peculiar" that Dr. Hannani discussed plaintiff's lower extremities, the ALJ should have recontacted Dr. Hannani in accordance with his duty to conduct an appropriate inquiry. *See* 20 C.F.R. § 404.1512(e) (noting that the administration "will seek additional evidence or clarification from your medical source when the report . . . from your medical source contains a conflict or ambiguity that must be resolved"). Accordingly, the ALJ's second ground cannot constitute a clear and convincing reason for rejecting Dr. Hannani's March 2007

opinion.

The ALJ's third ground for rejecting Dr. Hannani's March 2007 opinion -- *to wit*, that Dr. Hannani continued to recommend against back surgery -- is equally unpersuasive. It is well established that a treating physician's opinion may be properly rejected when his treatment notes fail to present "the sort of descriptions and recommendations one would expect to accompany a finding that [the claimant is] totally disabled." <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001). In this case, Dr. Hannani explained that, although plaintiff may need back surgery due to her degenerative disk disease, he has tried to "avoid" it because of, *inter alia*, plaintiff's emotional state (A.R. 660-61) and the invasiveness of the surgery (A.R. 713). Dr. Hannani has adequately explained why he has recommended that plaintiff not have an invasive back surgery at this time, and thus, the ALJ's reasoning does not constitute a clear and convincing reason for rejecting Dr. Hannani's March 2007 opinion.

Lastly, while defendant offers several additional reasons to explain the ALJ's rejection of Dr. Hannani's March 2007 opinion, the Court cannot entertain these post hoc rationalizations. *See, e.g.*, <u>Connett</u>, 340 F.3d at 874 (stating "[w]e are constrained to review the reasons the ALJ asserts" and "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons for rejecting the uncontroverted March 2007

14

opinion of plaintiff's treating physician, Dr. Hannani. This
constitutes reversible error.[6]

## III. **Remand Is Required**.

The decision whether to remand for further proceedings or order an
immediate award of benefits is within the district court's discretion.
Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no
useful purpose would be served by further administrative proceedings, or
where the record has been fully developed, it is appropriate to exercise
this discretion to direct an immediate award of benefits. *Id.* at 1179

---

[6]    Even assuming *arguendo* that the ALJ did not commit error in
rejecting Dr. Hannani's March 2007 opinion, it appears that the ALJ's
RFC assessment is not supported by substantial evidence. In his
decision, the ALJ generally adopts Dr. Hannani's April 2005 RFC
assessment; however, "in light of the MRI finding and giving some weight
to the state agency's assessment, the ALJ f[ound] that [plaintiff] has
been limited to occasional ladder climbing, stooping and crouching since
her alleged onset date." (A.R. 30.) Significantly, however, Dr.
Hannani's April 2005 report and the state agency physician's assessment
predate plaintiff's updated MRIs. Accordingly, the ALJ's inclusion of
additional limitations "in light of the MRI findings" constitutes a
medical finding that the ALJ is not qualified to make. *See generally*,
Tackett v. Apfel, 180 F.3d 1094, 1102 (ALJ may not substitute his own
interpretation of the medical evidence for the opinion of medical
professionals); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal.
2006)(noting that an ALJ "'must not succumb to the temptation to play
doctor and make [his] own independent medical findings'")(*citing* Rohan
v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)).

    In addition, there is no indication that the side effects of
plaintiff's medications -- including, *inter alia*, Vicodin and morphine
(A.R. 884) -- were considered in the disability evaluation. *See*
Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)(noting that an
ALJ must consider all factors, including the side effects of
medications, that might have a "'significant impact on an individual's
ability to work'")(citation omitted); *see also* Soc. Sec. Ruling 96-7p,
1996 WL 374186, at *2-*3, 1996 SSR LEXIS 4, at *7-*8 (noting that the
type, dosage, effectiveness, and side effects of any medication the
individual takes or has taken to alleviate pain or other symptoms should
be considered in the disability evaluation); 20 C.F.R.
§ 404.1529(c)(3)(iv).

("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the ALJ must correct the above-mentioned deficiencies and errors, and, if appropriate, further develop the record. After so doing, the ALJ may need to reassess plaintiff's RFC in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   June 28, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

17